FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 08, 2026

SEAN F. MCAVOY, CLERK

EMILY INMAN
490 Statter Rd
Ephrata, WA 98823
(509) 771-8730
emilyinmantitleixplaintiff@gmail.com
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| **EMILY INMAN,**<br>Plaintiff,<br><br>v.<br><br>COVISTA INC., formerly known as ADTALEM GLOBAL EDUCATION INC.; and<br>ADTALEM GLOBAL HEALTH, INC., doing business as AMERICAN UNIVERSITY OF THE CARIBBEAN SCHOOL OF MEDICINE,<br>Defendants. | **Case No.** 2:26-cv-000389-ACE<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Emily Inman, appearing pro se, alleges as follows:

## PRO SE STATUS

Plaintiff presently proceeds pro se due to the approaching expiration of the applicable statute of limitations and the need to timely preserve her claims. Plaintiff is actively seeking professional legal counsel and intends to obtain representation if counsel is available to undertake this matter.

## I. NATURE OF THE ACTION

1. This action arises from Defendants' discrimination against Plaintiff on the basis of pregnancy and pregnancy-related leave in connection with Plaintiff's enrollment in

the medical education program of American University of the Caribbean School of Medicine ("AUC").

2. Plaintiff alleges that following her return from pregnancy-related leave, Defendants failed to restore Plaintiff to the academic status she held before taking leave, including the examination standards, examination conditions, and educational opportunities applicable to Plaintiff before her leave.

3. Plaintiff seeks compensatory, economic, declaratory, equitable, and other relief legally available for the educational, financial, professional, and other injuries caused by Defendants' conduct.

## II. PARTIES

4. Plaintiff Emily Inman is an individual residing in Washington and is a student enrolled in the Doctor of Medicine program at AUC.

5. Defendant Covista Inc., formerly known as Adtalem Global Education Inc., is a Delaware corporation with its principal executive offices at 233 South Wacker Drive, Suite 800, Chicago, Illinois 60606. Covista Inc. has exercised ownership, oversight, control, and administrative authority concerning AUC and its operations.

6. Defendant Adtalem Global Health, Inc. is a New York corporation with its principal corporate address at 500 W. Monroe, Suite 1300, Chicago, Illinois 60661, and does business as American University of the Caribbean School of Medicine ("AUC").

7. AUC operates a medical education program leading to the Doctor of Medicine degree.

8. AUC receives federal financial assistance, including federal student-aid funds used by students to finance attendance at AUC.

9. At all relevant times, Plaintiff participated in AUC's medical education program.

10. At all relevant times, AUC and its administrators acted within the scope of their authority on behalf of the institutional and corporate Defendants.

11. Defendants exercised authority over policies, academic requirements, examination requirements, student progression, student complaints, and institutional responses relevant to Plaintiff's claims.

12. Defendants maintained policies and procedures governing student complaints and appeals.

13. Those procedures permitted students, including Plaintiff, to seek review of institutional decisions through Adtalem's Office of Equity, Access, and Opportunity ("AOEA").

14. AOEA possessed authority to investigate complaints concerning AUC and the conduct of AUC administrators.

15. Plaintiff submitted a formal complaint through the institutional process established by Defendants.

16. AOEA employees investigated Plaintiff's complaint.

17. As part of that investigation, AOEA reviewed information concerning Plaintiff's academic records, pregnancy-related leave, examination requirements, and treatment following her return from leave.

18. AOEA also obtained information from AUC administrators concerning the matters raised by Plaintiff.

19. AOEA ultimately issued Defendants' institutional determination concerning Plaintiffs discrimination complaint.

## III. JURISDICTION

20. This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

21. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs related state-law claims because those claims arise from the same case or controversy as Plaintiffs federal claims.

## IV. VENUE

22. Venue is proper in the Eastern District of Washington pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs claims occurred in this District and because substantial effects of Defendants' conduct were directed toward and experienced by Plaintiff while residing in this District.

23. Plaintiff resided in Ephrata, Washington, within the Eastern District of Washington, during material portions of the events giving rise to this action.

24. Plaintiff participated in AUC's medical education program while residing in Washington.

25. Plaintiff completed portions of her AUC education remotely while residing in Washington.

26. AUC permitted and facilitated Plaintiff's participation in aspects of its educational program from Washington.

27. While Plaintiff resided in Washington and participated in her AUC education from Washington, AUC regularly provided Plaintiff examination-preparation assistance through remote video meetings with an AUC fellow assigned to assist Plaintiff with preparation for the CBSE and Step 1 examination and to serve as a liaison between Plaintiff and AUC administration concerning Plaintiff's examination preparation.

28. Plaintiff received communications from AUC and Defendants concerning her academic status, examination requirements, educational opportunities, pregnancy-related leave, and return from leave while Plaintiff resided in Washington.

29. Plaintiff communicated with AUC administrators and representatives from Washington concerning those matters.

30. Before Plaintiff's pregnancy-related leave, examination conditions applicable to Plaintiff permitted Plaintiff to continue her medical education while residing in Washington.

31. Plaintiff relied upon those examination conditions in arranging her residence, finances, family life, and continued medical education in Washington.

32. Following Plaintiff's return from pregnancy-related leave, Defendants changed the conditions under which Plaintiff was permitted to complete her unfinished examination requirement.

33. Those changed conditions required Plaintiff to leave Washington and travel to Sint Maarten to complete examination attempts.

34. Defendants' decisions concerning Plaintiff's examination requirements therefore directly affected Plaintiff's ability to remain in Washington while continuing her medical education.

35. Plaintiff incurred financial, educational, and other consequences in Washington as a result of Defendants' decisions.

36. Plaintiff sought restoration and other remedies from Defendants while residing in Washington.

37. Defendants communicated decisions and responses concerning Plaintiff's requests for restoration to Plaintiff in Washington.

38. Plaintiff's claims therefore arise in substantial part from Defendants' educational relationship with Plaintiff in Washington, Defendants' communications and conduct directed toward Plaintiff while she resided in Washington, and Defendants' decisions altering the conditions under which Plaintiff could continue her medical education from Washington.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Enrollment and Participation in AUC's Medical Education Program

39. Plaintiff enrolled in AUC's Doctor of Medicine program.

40. Plaintiff successfully progressed through AUC's medical education curriculum.

41. During the September 2022 semester, Plaintiff was enrolled in Introduction to Clinical Medicine VI ("ICM VI").

42. Successful completion of ICM VI required Plaintiff to satisfy AUC's Comprehensive Basic Science Examination ("CBSE") requirement.

43. The CBSE is an examination used by AUC as part of its academic progression requirements.

44. Plaintiff's completion of the CBSE requirement was necessary for continued progression through AUC's medical education program.

45. During the September 2022 semester, AUC permitted students enrolled in ICM VI to complete CBSE examination attempts remotely from the United States.

46. Plaintiff was therefore able to reside in Washington while participating in her AUC education and preparing to satisfy the CBSE requirement.

47. Plaintiff maintained her home, family relationships, support system, and living arrangements in Washington.

48. Plaintiff's ability to participate in her education while residing in Washington materially reduced the financial and personal burden associated with completing her examination requirements.

49. Plaintiff communicated with AUC administrators and other AUC-affiliated individuals while residing in Washington concerning her education and examination preparation.

50. Plaintiff participated in her AUC education from Washington and regularly met remotely via video call with an AUC fellow assigned to assist Plaintiff with preparation for the CBSE and Step 1 examination and to serve as a liaison to an AUC administrator concerning Plaintiff's examination preparation.

51. Plaintiff continued preparing for the CBSE while residing in Washington.

52. Plaintiff intended to complete the CBSE requirement and continue progressing through AUC's medical education program.

**B. Plaintiff's Pregnancy and Pregnancy-Related Leave**

53. During the September 2022 semester, Plaintiff was pregnant.

54. Plaintiff experienced a pregnancy loss immediately before a scheduled CBSE examination attempt.

55. Plaintiff was medically unable to complete the examination as scheduled.

56. Plaintiff subsequently took an approved pregnancy-related medical leave from AUC.

57. Plaintiff's pregnancy-related leave interrupted her completion of the CBSE examination requirement associated with the September 2022 ICM VI course.

58. Plaintiff's ICM VI course requirement therefore remained unfinished while Plaintiff was on approved pregnancy-related leave.

59. Plaintiff did not voluntarily abandon the September 2022 ICM VI course or its examination requirement.

60. Plaintiff intended to complete the unfinished requirement upon returning from pregnancy-related leave.

61. Plaintiff returned from pregnancy-related leave and resumed her medical education.

**C. Changed Passing Standard Following Pregnancy-Related Leave**

62. Before Plaintiff's pregnancy-related leave, the passing standard applicable to Plaintiff's CBSE requirement was 59.5%.

63. Upon Plaintiff's return from pregnancy-related leave, AUC did not restore Plaintiff to the 59.5% passing standard applicable when Plaintiff's pregnancy-related leave began. Instead, AUC required Plaintiff to satisfy a passing standard of 64.5% to complete her unfinished examination requirement even though she was still actively enrolled as a student in the September 2022 semester while completing her CBSE attempts.

64. Plaintiff remained actively enrolled in the September 2022 semester from September 2022 through April 2023; prior to her pregnancy-related leave, during her leave, and after her return until the end of April 2023.

65. Plaintiff subsequently earned a score of 64.4% on the CBSE.

66. Plaintiff's 64.4% score exceeded the 59.5% passing standard applicable to her unfinished September 2022 examination requirement before pregnancy-related leave.

67. Plaintiff's 64.4% score also exceeded the 63.5% threshold identified as passing in the AUC September 2022 Semester Student Handbook.

68. Defendants nevertheless treated Plaintiff's 64.4% score as failing because it was 0.1 percentage point below the 64.5% standard imposed following Plaintiff's pregnancy-related leave.

69. Had AUC applied the passing standard applicable to Plaintiff before pregnancy-related leave, Plaintiff's 64.4% score would have satisfied the examination requirement.

70. AUC subsequently applied a passing score of 62% during a later semester.

71. Plaintiff repeatedly requested that AUC apply the examination standard associated with her unfinished September 2022 requirement.

72. AUC declined to do so.

73. As a result, Plaintiff was required to continue attempting to satisfy an examination requirement that her 64.4% score would otherwise have satisfied under the standard applicable before pregnancy-related leave.

**D. Changed Examination Conditions Following Pregnancy-Related Leave**

74. Before Plaintiff's pregnancy-related leave, students enrolled in ICM VI during the September 2022 semester were permitted to complete CBSE attempts remotely from the United States.

75. Following Plaintiff's return from pregnancy-related leave, AUC required Plaintiff to complete her remaining CBSE attempts in Sint Maarten.

76. Plaintiff therefore lost the remote examination conditions available before her pregnancy-related leave.

77. The requirement that Plaintiff return to Sint Maarten materially altered the conditions under which Plaintiff was required to complete her unfinished September 2022 examination requirement.

**E. Financial and Personal Consequences of Required Travel**

78. Plaintiff resided in Washington when AUC required her to return to Sint Maarten to complete her remaining CBSE attempts.

79. Traveling between Washington and Sint Maarten required substantial airfare and other travel expenses.

80. Plaintiff also incurred expenses associated with housing, food, transportation, and living in Sint Maarten.

81. Because Plaintiff could not afford repeated travel between Washington and Sint Maarten for the required examination dates, and additionally, the extensive travel and subsequent exhaustion from each round trip would impair her preparation for the CBSE, Plaintiff remained in Sint Maarten from approximately March 25 through April 26, 2023.

82. Before Plaintiff's pregnancy-related leave, Plaintiff's academic status and examination conditions permitted her to continue her medical education while residing affordably in Washington. Following Plaintiff's return from pregnancy-related leave, the changed examination conditions required Plaintiff to leave that living arrangement and reside in Sint Maarten for extended periods.

83. Plaintiff did not have sufficient funds at that time to secure alternative housing because alternative housing required payment upfront and Plaintiff had not yet received her student-loan refund from AUC. Plaintiff therefore needed AUC dormitory housing, which permitted Plaintiff to move in before payment was due.

84. Plaintiff experienced periods of housing insecurity while in Sint Maarten.

85. After entering AUC campus, Plaintiff showered and changed clothes in the shower room attached to the campus gym she accessed by electronically scanning her student badge, and then slept on chairs outside an AUC lecture hall, where campus security encountered Plaintiff and contacted AUC mental-health services.

86. These circumstances caused substantial disruption to Plaintiff's ability to prepare for and complete her examination requirements.

**F. Pathway Educational Program and Plaintiff's Requests for Additional Examination Attempts**

87. AUC created an educational program known as Pathway for members of Plaintiff's September 2022 cohort who had not successfully completed the CBSE requirement after their available examination attempts.

88. The Pathway educational program provided additional academic instruction and additional CBSE examination attempts.

89. Students participating in Pathway were permitted to complete additional CBSE attempts remotely from the United States.

90. Pathway therefore provided participating students both additional educational support and additional examination opportunities.

91. Plaintiff was not included in Pathway because Plaintiff had taken pregnancy-related leave and had an incomplete examination requirement rather than having exhausted her examination attempts during the September 2022 semester.

92. Plaintiff requested additional CBSE examination attempts comparable to those being provided to members of her September 2022 cohort through Pathway.

93. Plaintiff sought those additional attempts as a means of restoring her, as nearly as practicable, to the academic position she would have occupied absent the interruption caused by pregnancy-related leave.

94. Defendants did not include Plaintiff in Pathway and declined to provide Plaintiff the additional examination attempts she requested.

95. AUC subsequently informed Plaintiff in writing that it would not provide Plaintiff the Pathway educational program retroactively because Plaintiff had taken pregnancy-related leave before the program was released, even though students in the Pathway educational program from Plaintiff's September 2022 cohort were still actively completing their additional CBSE attempts remotely from the United States during the period in which Plaintiff requested additional CBSE attempts, with Pathway examination administrations continuing from March 2023 through November 2023.

96. Remote CBSE attempts were available to students enrolled with Plaintiff in ICM VI for the September 2022 semester from October 2022 through December 2022, and additional remote CBSE attempts were available to members of Plaintiff's September 2022 cohort through the Pathway educational program from March 2023 through November 2023. Plaintiff requested additional CBSE attempts for the period from May 2023 through August 2023, during the same period in which members of Plaintiff's September 2022 cohort were actively completing additional CBSE attempts, as a means of restoring Plaintiff to an academic position equivalent, as

nearly as practicable, to the status Plaintiff held before pregnancy-related leave interrupted her academic progression.

97. Plaintiff was not asking AUC to provide an examination opportunity that had already ended. Students from Plaintiff's September 2022 cohort participating in the Pathway educational program were still actively receiving and using the additional CBSE examination opportunities during the period in which Plaintiff was requesting additional CBSE attempts. For example, if Plaintiff had been provided examination attempts in May 2023, June 2023, July 2023, and August 2023, students from Plaintiff's September 2022 cohort who were participating in the Pathway educational program were taking the CBSE during that time and into November 2023.

98. Plaintiff's requested additional examination attempts therefore overlapped with examination administrations actually being provided to members of Plaintiff's September 2022 cohort.

99. AUC provided a remedial educational program to students enrolled in ICM VI during the September 2022 semester.

100. AUC did not provide a remedial educational program or an equivalent educational opportunity to Plaintiff following Plaintiff's return from pregnancy-related leave.

101. AUC did not provide a remedial educational program to students enrolled in ICM VI during the January 2023 semester.

102. During the subsequent May 2023 semester, AUC provided students enrolled in ICM VI a remedial educational program known as REACH (the "REACH educational program").

103. The REACH educational program provided participating students additional educational instruction and additional examination opportunities.

**H. Remote Examination Opportunities Provided to Other Students**

104. Members of Plaintiff's September 2022 cohort participating in the Pathway educational program were permitted to complete additional CBSE attempts remotely from the United States.

105. Those remote examination opportunities continued from March 2023 through November 2023.

106. Plaintiff requested additional examination attempts during the same period.

107. Plaintiff requested that those attempts be provided under conditions comparable to those available to members of her September 2022 cohort.

108. Providing Plaintiff additional remote examination attempts would have permitted Plaintiff to return to and remain in Washington.

109. Defendants declined Plaintiff's request.

110. Plaintiff was instead required to remain subject to the examination conditions imposed following her return from pregnancy-related leave.

111. Those conditions required Plaintiff to travel to and remain in Sint Maarten.

112. Plaintiff thereby incurred expenses and disruptions that students completing remote Pathway examinations from the United States did not incur.

113. Plaintiff repeatedly explained the detrimental consequences of the changed examination conditions.

114. Plaintiff sought restoration of the examination conditions and opportunities she had before pregnancy-related leave.

115. Defendants did not provide that restoration.

116. Plaintiff therefore continued to experience the consequences of the changed examination conditions.

**I. Plaintiff's Requests for Restoration**

117. Plaintiff repeatedly communicated with AUC administrators concerning the treatment of her unfinished September 2022 examination requirement following pregnancy-related leave.

118. Plaintiff raised the loss of remote examination opportunities and specified the detrimental consequences to Plaintiff of being required to return to Sint Maarten.

119. Plaintiff sought reasonable measures from AUC and Adtalem that would restore her to the academic status she would have occupied absent the interruption caused by pregnancy-related leave, including the examination standards, examination conditions, and educational opportunities that comprised that status.

**J. AUC's Knowledge of Plaintiff's Circumstances and Continuing Consequences**

120. AUC knew that Plaintiff's unfinished September 2022 examination requirement resulted from pregnancy-related leave.

121. AUC knew that Plaintiff had returned from pregnancy-related leave to complete that unfinished requirement.

122. AUC knew that the examination standard applied to Plaintiff following her return differed from the standard applicable before her leave.

123. AUC knew that Plaintiff's 64.4% score would have satisfied the passing standard applicable before pregnancy-related leave.

124. AUC knew that Plaintiff was required to return to Sint Maarten to complete examination attempts.

125. AUC knew that Plaintiff had previously been permitted to complete CBSE attempts remotely from the United States.

126. AUC knew that members of Plaintiff's September 2022 cohort participating in Pathway were completing additional CBSE attempts remotely from the United States.

127. AUC knew that those examination opportunities remained ongoing during the period in which Plaintiff requested additional attempts.

128. AUC knew that requiring Plaintiff to remain in Sint Maarten imposed additional financial and personal burdens.

129. AUC knew that Plaintiff experienced housing insecurity while in Sint Maarten.

130. AUC personnel encountered Plaintiff sleeping on campus.

131. Campus security contacted AUC mental-health services concerning Plaintiff.

132. Plaintiff communicated with AUC administrators concerning the circumstances affecting her education and examination preparation.

133. Plaintiff repeatedly sought assistance and restoration from AUC.

134. Plaintiff explained that the changed conditions were causing substantial hardship.

135. Plaintiff explained that the changed conditions interfered with her ability to prepare for examinations.

136. Plaintiff sought measures that would allow her to continue progressing through medical school without the additional consequences created following pregnancy-related leave.

137. AUC nevertheless declined to restore Plaintiff to the examination standards, examination conditions, and educational opportunities applicable before her leave.

138. AUC also declined to provide Plaintiff educational and examination opportunities equivalent to those being provided to members of her September 2022 cohort through Pathway.

139. Plaintiff continued attempting to progress through the medical education program despite those circumstances.

140. Plaintiff continued communicating with AUC concerning restoration and relief.

141. Defendants had continuing notice of Plaintiff's allegations and the consequences Plaintiff attributed to the treatment she received following pregnancy-related leave.

142. Defendants nevertheless did not provide the restoration Plaintiff requested.

143. The consequences of Defendants' decisions continued while Plaintiff remained enrolled and attempted to progress through the medical education program.

**K. AOEA Complaint and Institutional Review**

144. Plaintiff submitted a formal discrimination complaint to Adtalem's Office of Equity, Access, and Opportunity.

145. Plaintiff's complaint challenged AUC's treatment of Plaintiff following pregnancy-related leave.

146. Plaintiff raised concerns regarding the changed CBSE passing standard.

147. Plaintiff raised concerns regarding the loss of remote examination opportunities.

148. Plaintiff raised concerns regarding the educational opportunities provided to members of Plaintiff's September 2022 cohort but not provided to Plaintiff.

149. AOEA investigated Plaintiff's complaint.

150. AOEA reviewed Plaintiff's academic circumstances and communications concerning the disputed examination requirements.

151. AOEA obtained information from AUC administrators concerning Plaintiff's allegations.

152. AOEA acknowledged that Plaintiff had not been included in the Pathway educational program provided to members of Plaintiff's September 2022 cohort.

153. AOEA acknowledged that the examination scoring criteria applied to Plaintiff following pregnancy-related leave differed from the scoring criteria applied to members of Plaintiff's September 2022 cohort.

154. AOEA reviewed AUC's explanation for its treatment of Plaintiff following pregnancy-related leave.

155. AOEA ultimately determined that there was insufficient evidence to substantiate Plaintiff's discrimination complaint.

156. Defendants did not restore Plaintiff to the passing standard applicable before her pregnancy-related leave.

157. Defendants did not retroactively recognize Plaintiff's 64.4% score as satisfying the unfinished September 2022 CBSE requirement.

158. Defendants did not provide Plaintiff the additional examination attempts she had requested during the period in which Pathway examination opportunities remained ongoing.

159. Defendants did not restore Plaintiff to the remote examination conditions available before pregnancy-related leave.

160. Plaintiff therefore remained subject to the academic and financial consequences resulting from Defendants' decisions.

161. Those consequences continued after completion of the AOEA investigation.

**L. Late Offer of One Additional Examination Attempt**

162. After the May 2023 semester had already begun, after Plaintiff had enrolled in ICM VI for that semester, paid additional tuition, and relocated to Sint Maarten, AUC offered Plaintiff only one additional examination attempt through which to satisfy her unfinished September 2022 ICM VI examination requirement.

163. AUC informed Plaintiff that if she passed the one additional examination attempt, she would receive a passing grade for the unfinished September 2022 ICM

VI requirement, but if she failed the examination, she would fail the course and be subject to dismissal with a right to appeal.

164. Plaintiff requested that she be permitted to await completion of the ongoing AOEA investigation before deciding whether to take the additional examination attempt.

165. While the AOEA investigation remained pending, Plaintiff subsequently sought to take the additional examination attempt in order to avoid dismissal.

166. Before AUC presented Plaintiff with these options, Plaintiff was unaware that accepting the one additional CBSE attempt would require her to withdraw from the May 2023 semester and relinquish the three CBSE attempts available to her through that semester.

167. Plaintiff had previously requested that she be permitted to await the determination of the ongoing AOEA investigation because Plaintiff believed that her 64.4% score should be considered passing under the 59.5% passing standard applicable to her unfinished September 2022 examination requirement.

168. Plaintiff sought to await the AOEA determination rather than risk failing the one additional CBSE attempt under the 64.5% passing standard. Acceptance of the one additional CBSE attempt required Plaintiff to accept application of the 64.5% passing standard, with failure of that examination resulting in failure of the course and dismissal from the medical program with the right to appeal.

169. Upon being informed that she was required to choose between the one additional CBSE attempt under those conditions or remaining enrolled in the May

2023 semester with three CBSE attempts, Plaintiff elected to remain enrolled in the May 2023 course rather than relinquish three examination attempts and withdraw from a semester in which she had already enrolled, paid tuition, relocated to Sint Maarten, and actively participated.

170. As a result of Defendants' treatment of Plaintiff's 64.4% score as failing, AUC assigned Plaintiff a failing grade for the September 2022 ICM VI course, resulting in an F on Plaintiff's medical school transcript.

171. The one additional examination attempt offered after Plaintiff had already progressed into the May 2023 semester, which required Plaintiff to risk failure of the course and dismissal from the medical program if she did not achieve the newly applied 64.5% passing standard, did not provide Plaintiff the additional examination attempts she had requested before progression into a subsequent semester, and did not restore the educational opportunity lost following pregnancy-related leave.

172. Plaintiff subsequently passed the Comprehensive Basic Science Examination on her third examination attempt during the May 2023 semester.

173. Plaintiff thereby successfully satisfied the Comprehensive Basic Science Examination requirement and continued her medical education.

**M. Separation From Plaintiff's Long-Term Partner and Support System in Washington**

174. Plaintiff was separated from her support system in Washington as a result of being required to travel to and remain in Sint Maarten to complete examination attempts necessary to satisfy her unfinished September 2022 ICM VI course

requirement, and subsequently to repeat the ICM VI course during the May 2023 semester after Defendants declined to apply the 59.5% passing standard that had governed Plaintiff's examination requirement before pregnancy-related leave.

175. During this period, Plaintiff was still experiencing grief associated with the loss of her pregnancy while also attempting to resolve the disputed examination score through communications with AUC administrators and the AOEA investigation.

176. Plaintiff's separation from her support system in Washington, including loved ones and trusted, familiar medical providers, caused Plaintiff substantial distress and impaired her ability to focus, study, and prepare for examinations as effectively as she otherwise would have been able to do.

177. At the time Plaintiff was required to leave Washington and travel to Sint Maarten, Plaintiff and her long-term partner, with whom Plaintiff had been in a relationship since August 2012, were actively attempting to conceive another child.

178. Plaintiff's required absence from Washington interfered with Plaintiff's family life and personal relationships.

179. Plaintiff's extended presence in Sint Maarten separated Plaintiff from the support system upon which she ordinarily relied while pursuing her medical education.

180. These circumstances further impaired Plaintiff's educational capacity during the period in which she was attempting to satisfy AUC's examination requirements.

**N. Employment and Economic Consequences**

181. Plaintiff had previously worked as a substitute teacher before attending medical school.

182. Plaintiff intended to reactivate that employment while residing in Washington.

183. Plaintiff's required presence in Sint Maarten prevented Plaintiff from pursuing substitute-teaching work in Washington during that period.

184. After Plaintiff successfully completed the CBSE requirement and returned to Washington, Plaintiff resumed substitute teaching.

185. Plaintiff therefore lost the ability to pursue available employment during periods in which Defendants' examination conditions required her presence in Sint Maarten.

186. Plaintiff also incurred additional tuition and educational expenses associated with repeating ICM VI.

187. Plaintiff incurred travel, housing, transportation, and living expenses associated with returning to and remaining in Sint Maarten.

188. Plaintiff's delayed academic progression also delayed her progression toward completion of medical school and physician employment.

**O. Time and Educational Capacity Expended Seeking Restoration**

189. Plaintiff expended substantial time and energy communicating with AUC administrators, explaining the circumstances surrounding her pregnancy-related leave and academic progression, identifying differences between the status she held prior to

pregnancy-related leave and the status to which she returned, as well as differences between the conditions and educational opportunities provided to Plaintiff and those provided to members of Plaintiff's September 2022 cohort who did not take leave, requesting restoration and other remedies, gathering and reviewing relevant records, and responding to Defendants concerning those issues.

190. Plaintiff also expended substantial time and energy preparing and pursuing her formal complaint through AOEA.

191. Plaintiff participated in the AOEA investigation while continuing to attempt to progress through her medical education.

192. Plaintiff reviewed records, correspondence, policies, academic requirements, and other information necessary to explain and support her requests for restoration.

193. Plaintiff's efforts to obtain restoration required substantial attention and mental capacity that otherwise could have been devoted to studying, examination preparation, learning, family responsibilities, employment, rest, and other productive activity.

194. The time and attention required to pursue restoration impaired Plaintiff's productive capacity as a medical student.

195. Plaintiff continued pursuing restoration because Defendants did not voluntarily restore Plaintiff to the academic position she held before pregnancy-related leave.

196. Plaintiff's efforts to obtain restoration therefore continued for an extended period while Plaintiff simultaneously attempted to progress through medical school.

197. Plaintiff is expending substantial time and energy preparing this litigation in an effort to obtain restoration from AUC and Adtalem while continuing to progress through her medical education. The time, attention, and energy required to pursue restoration through litigation have caused Plaintiff substantial mental and emotional distress and impaired Plaintiff's productive capacity as a student, including her ability to concentrate, study, prepare for examinations, and learn. These continuing effects result from AUC's and Adtalem's failure to restore Plaintiff to the status she held prior to pregnancy-related leave and have further compounded the injury to Plaintiff.

**P. Continuing Educational Consequences**

198. Plaintiff continued her medical education following the events described above.

199. The consequences of Defendants' treatment of Plaintiff did not end when Plaintiff eventually passed the CBSE.

200. Plaintiff's academic progression had already been delayed.

201. Plaintiff had incurred additional educational and living expenses.

202. Plaintiff had lost educational opportunities provided to members of her September 2022 cohort.

203. Plaintiff had been required to devote substantial time and productive capacity to seeking restoration.

204. Plaintiff's educational progression remained behind the progression she would have achieved absent the interruption and subsequent treatment described herein.

205. Plaintiff continued to experience consequences associated with that delayed progression.

206. Those consequences affected Plaintiff's timing for completion of medical school, examinations, and entry into physician employment.

207. Plaintiff therefore continues to experience educational and economic consequences from Defendants' alleged discrimination.

**Q. Plaintiff's Efforts to Mitigate Harm and Continue Her Education**

208. Plaintiff consistently attempted to continue progressing through AUC's medical education program.

209. Plaintiff returned from pregnancy-related leave and attempted to complete her unfinished examination requirement.

210. Plaintiff traveled to Sint Maarten when AUC required her presence there.

211. Plaintiff continued studying and preparing for examinations despite financial, housing, personal, and educational disruption.

212. Plaintiff repeatedly sought solutions from AUC that would allow her to continue progressing.

213. Plaintiff requested additional examination attempts while comparable examination attempts remained available to members of her September 2022 cohort.

214. Plaintiff enrolled in the May 2023 semester and continued attempting to satisfy AUC's academic requirements.

215. Plaintiff ultimately passed the CBSE.

216. Plaintiff continued her medical education thereafter.

217. Plaintiff has therefore taken substantial steps to mitigate the educational and economic consequences of Defendants' conduct.

**R. Defendants' Failure to Restore Plaintiff**

218. Despite Plaintiff's repeated requests, Defendants did not restore Plaintiff to the examination standard applicable before pregnancy-related leave.

219. Defendants did not restore Plaintiff to the remote examination conditions applicable before pregnancy-related leave.

220. Defendants did not provide Plaintiff the educational opportunities provided to members of Plaintiff's September 2022 cohort through Pathway.

221. Defendants did not provide Plaintiff the additional examination attempts she requested while Pathway examination opportunities remained ongoing.

222. Defendants did not retroactively recognize Plaintiff's 64.4% score as satisfying her unfinished September 2022 examination requirement.

223. Defendants did not eliminate the failing grade resulting from their treatment of Plaintiff's 64.4% score as failing.

224. Defendants did not compensate Plaintiff for the additional tuition, travel, housing, living, employment, and other economic consequences Plaintiff incurred.

225. Defendants have therefore not restored Plaintiff, as nearly as practicable, to the academic and economic position she would have occupied absent the alleged discrimination.

## VI. INJURIES AND DAMAGES

226. As a direct and proximate result of Defendants' conduct, Plaintiff suffered educational, economic, professional, and other legally compensable injuries.

227. Plaintiff lost educational opportunities provided to members of Plaintiff's September 2022 cohort who did not take leave.

228. Plaintiff lost the benefit of the passing standard applicable to her unfinished examination requirement before pregnancy-related leave.

229. Plaintiff lost remote examination conditions that had permitted her to continue her medical education while residing in Washington.

230. Plaintiff incurred airfare and other travel expenses associated with traveling between Washington and Sint Maarten.

231. Plaintiff incurred housing, transportation, food, and other living expenses associated with remaining in Sint Maarten.

232. Plaintiff incurred additional tuition and educational expenses associated with repeating ICM VI.

233. As a result of Defendants' declining to recognize Plaintiff's 64.4% score as passing, AUC assigned Plaintiff a failing grade for the September 2022 ICM VI course, resulting in an F on Plaintiff's medical school transcript.

234. Plaintiff lost opportunities to pursue employment in Washington during periods in which she was required to remain in Sint Maarten.

235. Plaintiff's academic progression was delayed.

236. Plaintiff's completion of medical school and progression toward physician employment were correspondingly delayed.

237. Plaintiff suffered lost and delayed earning capacity associated with delayed progression toward physician employment.

238. Plaintiff incurred additional financial burdens associated with the extended period required to complete her medical education.

239. Plaintiff's productive educational capacity was impaired by the circumstances resulting from Defendants' conduct, including the time, attention, and mental resources diverted from studying, examination preparation, and learning.

240. Plaintiff experienced substantial disruption to her family relationships and support system while required to remain in Sint Maarten.

241. Plaintiff experienced substantial mental and emotional distress associated with the circumstances described herein, which impaired Plaintiff's ability to concentrate, study, prepare for examinations, and learn.

242. Plaintiff does not seek under Title IX compensation for mental or emotional distress itself. Rather, Plaintiff alleges the resulting impairment of her productive and educational capacity, including impairment of her ability to concentrate, study, prepare for examinations, learn, and otherwise devote productive time and mental resources to her medical education, and seeks recovery only for resulting injuries to the extent legally compensable and proven.

243. Plaintiff expended substantial productive time, energy, and mental capacity attempting before litigation to obtain restoration, remedy, and mitigation of the

consequences of the alleged discrimination, impairing Plaintiff's capacity as a student and reducing the time, energy, attention, and mental resources available for studying, examination preparation, and learning.

244. Plaintiff's time has independent productive value. Time Plaintiff was required to divert to seeking restoration, remedy, and mitigation of the consequences of Defendants' alleged discrimination was time unavailable to Plaintiff for medical education, studying, examination preparation, employment, family responsibilities, rest, and other productive activity. Plaintiff seeks recovery for the loss of that productive time to the extent legally compensable and proven.

245. Plaintiff seeks recovery of all compensatory and economic damages legally recoverable and proven in this action.

## VII. COUNT I — TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

246. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

247. Title IX provides that no person in the United States shall, on the basis of sex, be excluded from participation in, denied the benefits of, or subjected to discrimination under an education program or activity receiving federal financial assistance.

248. Discrimination on the basis of pregnancy and pregnancy-related conditions constitutes sex discrimination under Title IX.

249. AUC operates an education program receiving federal financial assistance.

250. Plaintiff was a participant in and beneficiary of AUC's medical education program.

251. Plaintiff took pregnancy-related leave in connection with a pregnancy loss.

252. Plaintiff was entitled to return from pregnancy-related leave without being subjected to discriminatory academic treatment because of that leave.

253. Before pregnancy-related leave, Plaintiff's unfinished CBSE requirement was governed by a 59.5% passing standard.

254. Following Plaintiff's return from pregnancy-related leave, Defendants subjected Plaintiff to a 64.5% passing standard in completing that unfinished requirement.

255. Plaintiff earned a score of 64.4%, which would have satisfied the standard applicable before her pregnancy-related leave.

256. Defendants nevertheless treated that score as failing.

257. Before pregnancy-related leave, Plaintiff was permitted to complete CBSE examination attempts remotely from the United States.

258. Following pregnancy-related leave, Defendants required Plaintiff to complete remaining attempts in Sint Maarten.

259. Defendants provided members of Plaintiff's September 2022 cohort additional educational instruction and examination attempts through Pathway.

260. Defendants excluded Plaintiff from Pathway because Plaintiff's pregnancy-related leave had interrupted her completion of the September 2022 examination requirement.

261. Plaintiff repeatedly requested restoration of the academic status and educational opportunities she would have occupied absent pregnancy-related leave.

262. Defendants had actual notice of Plaintiff's allegations through Plaintiff's repeated communications and formal AOEA complaint.

263. Defendants had authority to take corrective action concerning Plaintiff's examination standards, examination conditions, educational opportunities, academic records, and other consequences of the alleged discrimination.

264. Defendants declined to provide the restoration requested by Plaintiff.

265. Defendants' conduct subjected Plaintiff to different and less favorable academic conditions and educational opportunities following pregnancy-related leave.

266. Defendants' conduct caused Plaintiff educational and economic injury.

267. Plaintiff is entitled to all legal and equitable relief available under Title IX.

## VIII. COUNT II — WASHINGTON LAW AGAINST DISCRIMINATION

268. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

269. The Washington Law Against Discrimination prohibits discrimination on the basis of sex in places of public accommodation and other circumstances covered by Washington law.

270. Pregnancy discrimination constitutes discrimination on the basis of sex.

271. Plaintiff participated in Defendants' educational program while residing in Washington.

272. Defendants provided educational services and communicated with Plaintiff in Washington.

273. Defendants' decisions concerning Plaintiff's academic status and examination conditions materially affected Plaintiff's participation in Defendants' educational program from Washington.

274. Following Plaintiff's pregnancy-related leave, Defendants subjected Plaintiff to different academic standards, conditions, and educational opportunities than those applicable before her leave and those provided to other students.

275. Defendants' conduct caused injury to Plaintiff in Washington.

276. Plaintiff repeatedly requested restoration and corrective action.

277. Defendants declined to provide the requested restoration.

278. Plaintiff is entitled to all remedies available under Washington law to the extent the Washington Law Against Discrimination applies to Defendants' conduct.

## IX. TIMELINESS

279. Plaintiff's claims arise from a continuing course of conduct beginning with Defendants' treatment of Plaintiff upon her return from pregnancy-related leave and continuing through Defendants' subsequent decisions concerning restoration and Plaintiff's formal discrimination complaint.

280. Plaintiff diligently pursued relief through Defendants' internal processes.

281. Plaintiff repeatedly requested corrective action and restoration.

282. Plaintiff submitted a formal complaint through AOEA.

283. AOEA investigated Plaintiff's allegations and issued an institutional determination.

284. Defendants continued declining to provide the restoration requested by Plaintiff following that determination.

285. Plaintiff continues to experience educational and economic consequences from Defendants' conduct.

286. Plaintiff files this action within the applicable limitations period.

287. To the extent any portion of Plaintiff's claims is alleged to have accrued earlier, Plaintiff alleges that applicable tolling, continuing-violation, equitable, and other timeliness principles preserve her claims to the fullest extent permitted by law.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants and award relief including:

A. A declaration that Defendants violated Plaintiff's rights under Title IX and, to the extent applicable, the Washington Law Against Discrimination;

B. Appropriate equitable and injunctive relief requiring Defendants, as nearly as practicable, to restore Plaintiff to the academic position she would have occupied absent the alleged discrimination;

C. Appropriate correction of Plaintiff's academic records, including relief concerning the failing grade assigned in connection with the September 2022 ICM VI course;

D. Compensatory and economic damages in an amount to be proven at trial for legally recoverable educational, financial, employment, professional, and other injuries;

E. Recovery of additional tuition and educational expenses legally attributable to Defendants' conduct;

F. Recovery of legally compensable travel, housing, transportation, living, and related expenses;

G. Recovery for lost and delayed earning capacity to the extent legally recoverable and proven;

H. Prejudgment and post-judgment interest as permitted by law;

I. Costs and other litigation expenses recoverable by a pro se litigant as permitted by law; and

J. Such other and further legal or equitable relief as the Court deems just and proper.

## XI. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED this 5th day of September, 2026.

Respectfully submitted,

Emily Inman

Emily Inman
Plaintiff, Pro Se
490 Statter Rd
Ephrata, WA 98823
(509) 771-8730
emilyinmantitleixplaintiff@gmail.com